Argued June 19, affirmed June 27, 1951

## MOTLEY v. MOTLEY

233 P. 2d 212

*Charles W. Reames,* of Medford, argued the cause and filed a brief for appellant.

*William Ganong,* of Klamath Falls, argued the cause for respondent and cross-appellant. On the brief were Ganong & Ganong, of Klamath Falls.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE and TOOZE, Justices.

TOOZE, J.

This is a divorce suit in which both husband and wife seek a dissolution of the marriage contract. The trial court entered a decree dismissing both the complaint and the cross-complaint with prejudice. Both parties have appealed.

In her complaint (amended) the wife charges her husband with cruel and inhuman treatment in several respects as particularly set forth. In general, she charged her husband with physical violence, with cursing, intoxication, immoral associations with other women, frequenting houses of ill repute, accusing her of improper relations with other men, and other misconduct. The husband, by his answer and cross-complaint, denies her accusations of misconduct, and affirmatively charges his wife with cruel and inhuman treatment, in that he alleges she cursed him, falsely accused him of adultery and of frequenting houses of ill fame, snubbed, quarreled at and humiliated him at social functions, nagged him, and refused matrimonial intercourse. The wife, by her reply, denied the alleged misconduct on her part. Both the complaint and answer go into considerable detail in describing the numerous items of property owned by the parties and the value thereof.

Upon the issues thus formed, the case was tried. Upon the trial plaintiff introduced testimony to support the allegations of her complaint. She was corroborated in most respects by her two daughters as to the allegations of cruel and inhuman treatment. Aside from the testimony of one other witness respecting certain instances of intoxication on the part of defendant, there was no other corroboration. The defendant, as a witness, categorically denied such misconduct with the single exception he admitted that upon one occasion, and while acting under extreme provocation, he slapped the plaintiff with his open hand. Defendant was the only witness testifying to the alleged misconduct of his wife.

It was the contention of defendant that plaintiff's

entire case was simply a frame-up for the purpose of obtaining a large share of his property. The greater portion of the evidence is directed to these property matters, and there was a dispute between the parties as to the value of the several assets involved.

The parties were married February 8, 1939. Both had been married before. At the time of this marriage, plaintiff had twin daughters as the issue of a prior marriage, and defendant had a daughter, the issue of his prior marriage. Plaintiff's daughters, at the time of the marriage, were about fifteen years of age. Upon the marriage, these girls became members of defendant's household and remained members thereof almost continuously until their respective marriages. At no time did defendant's daughter live with the parties. Plaintiff is fifty-three years of age and defendant is fifty-nine.

If the testimony of plaintiff and her two daughters was to be believed, plaintiff was entitled to a divorce. Their story as related upon the witness stand outlined a course of misconduct on the part of defendant of a most sordid nature. No good purpose would be served here to set forth the details of such testimony. Suffice to say that in some respects the claims made were so unreasonable and improbable as to be fantastic. It is apparent from the nature of the trial court's decree that the court was not much impressed by the same.

On the other hand, defendant's testimony respecting his wife's alleged misconduct was not too satisfactory, and it was in no way corroborated except as such corroboration appeared from the claims made by plaintiff herself as a part of her case, and it must be remembered that defendant himself did admit at least one act of physical violence upon his part. The court did not need

to accept his explanation that he had sufficient provocation therefor.

We are asked to read the cold record and from it determine wherein lies the truth. We do not have the advantage enjoyed by the able and experienced trial judge, who saw and heard the witnesses testify, observed their facial expressions while under examination, observed their conduct and demeanor on the witness stand, their evasiveness or lack thereof, and all the other relatively small details that do not and cannot appear in a transcript, but which in most cases are highly important in finding the truth.

The record discloses that the trial judge gave very careful attention to all the testimony as it was being offered, and when in doubt, himself questioned the witnesses. There is nothing in the record that even remotely suggests capriciousness on his part. On the contrary, the record discloses a most painstaking and conscientious effort to discover the truth.

From the evidence introduced, and particularly from the very extensive portion thereof directed to property matters, the trial court may well have concluded that securing the property of defendant was the motivating influence behind the whole proceeding, and, therefore, the claims of misconduct on the part of defendant should be viewed with caution. Sometimes "a straw will show which way the wind blows." The improbability of some of the things testified to may have been a controlling factor in the final determination.

It is manifest that the trial court found the parties *in pari delicto*. That finding is entitled to great weight. We do not feel at liberty to disturb it.

The decree is affirmed.